# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FRANK HIGUERA**, <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF PORTLAND and EILEEN ARGENTINA**, <br><br> Defendants. | Case No. 3:18-cv-1083 <br><br> **OPINION AND ORDER** |

Judy Snyder, LAW OFFICES OF JUDY SNYDER, 1000 SW Broadway, Suite 2400, Portland, OR, 97205. Of Attorneys for Plaintiff.

Anne Milligan, Deputy City Attorney, PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW 4th Avenue, Room 430, Portland, OR, 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Frank Higuera filed a lawsuit in state court against Defendants City of Portland ("City") and Eileen Argentina (collectively, "Defendants"). Plaintiff asserts claims alleging that Defendants refused to hire Plaintiff because of his color; specifically, that he is too pale. Defendants timely removed this case to federal court. Defendants now move to dismiss Plaintiff's Second Claim for Relief, which alleges violations of 42 U.S.C. § 1981.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

# BACKGROUND

Plaintiff is a resident of Oregon. He identifies as an Hispanic male. Beginning in 2011, he was employed as a seasonal maintenance worker with the City's Parks and Recreation Department, working from March through October of each year. On February 12, 2018, he began working full time for the City in a Utility I position. He was hired for that position in January 2018. Plaintiff's allegations involve his difficulty getting hired in other positions, particularly positions involving working with at risk youth.

In 2011, Plaintiff was hired as a seasonal park ranger, but the position was later cut due to budget cuts. Plaintiff was never re-hired for a park ranger position. Since 2014, Plaintiff has applied for several positions in the Recreation Department, including Recreation Coordinator I, Recreation Coordinator I—At Risk Youth/Teen Outreach Specialty, and Recreation Coordinator II—At Risk Youth Outreach Specialty. On February 1, 2016, Plaintiff was interviewed for a Recreation Coordinator I—At Risk Youth position, but did not receive a second interview and was not hired. Instead an African American male who was younger than Plaintiff was hired.

In 2016, a temporary Recreation Coordinator I position became available. Only people who had made the list of potential applicants for the permanent Recreation Coordinator I—At Risk Youth position were considered for the temporary position. Jeff Milkes, the manager for the position, believed that Plaintiff would be a good fit. He and Craig Vanderbout, the local supervisor, interviewed Plaintiff for the position. Mr. Milkes wanted to hire Plaintiff for the position, and Plaintiff believed he would be hired. He did not hear anything further about the position for several months.

In the summer of 2016, Plaintiff spoke to Betsy Refern, a supervisor with the City, about his difficulty obtaining a position with the City on a full time basis. Ms. Refern told Plaintiff that

he "needed to get a tan." Later, in September 2016 at a city-wide picnic, Mr. Milkes told Plaintiff that Mr. Milkes "could not" hire Plaintiff.

In March 2017, Plaintiff filed a discrimination complaint with the City's Human Resources Department. Plaintiff expressed concern that he was not being hired despite being qualified and having City managers who wanted to hire him. Plaintiff mentioned that his age may be a factor in his difficulty obtaining employment with the City because everyone who had been hired was younger than him. Jeanne Kawamoto, an employee at the Human Resources Department, told Plaintiff that there would be an investigation. Plaintiff never heard back from anyone in the Human Resources Department regarding the investigation.

On or about March 30, 2017, Plaintiff contacted Mr. Milkes, who had since left Portland and relocated to California. Plaintiff told Mr. Milkes about his concerns regarding not being selected for the temporary Recreation Coordinator I position. Mr. Milkes stated that he wanted to hire Plaintiff for the position but was told by the Parks and Recreation Services Manager, Elieena Argentina, that he could not hire Plaintiff because Plaintiff was the "wrong color." Ms. Kawamoto later called Mr. Milkes and asked him not to communicate with Plaintiff again.

In June 2017, Ms. Kawamoto encouraged Plaintiff to apply for a Recreation Leader - Teen position. Plaintiff's seasonal supervisor also encouraged Plaintiff to apply for that position. Plaintiff applied, but was not selected to be interviewed. Plaintiff also applied for another Recreation Coordinator I—At Risk Youth position in July 2017, but he was not hired. Plaintiff alleges that he was not selected for these positions because of the color of his skin.

On September 14, 2017, Plaintiff submitted a Notice of Tort Claim to the City. On March 23, 2018, Plaintiff filed his complaint against the City in the Multnomah County Circuit Court, alleging that the City refused to hire him because of the color of his skin in violation of

ORS 659A.030(1)(a). Plaintiff filed an Amended Complaint on May 15, 2018, joining Eileen Argentina as a defendant, and adding the allegations that Defendants violated 42 U.S.C. § 1981 and 42 U.S.C. § 1983 by refusing to hire Plaintiff because of the color of his skin. On June 20, 2018, Defendants removed the case to this Court.[1]

**DISCUSSION**

Defendants move to dismiss Plaintiff's Second Claim for Relief, which alleges violations of 42 U.S.C. § 1981. Defendants argue under Federal Rule of Civil Procedure 12(b)(6) that Plaintiff fails to state a claim upon which relief can be granted. Defendants assert that § 1981 only protects individuals against racial discrimination and that, even if Plaintiff has plausibly alleged that Defendants discriminated on the basis of skin color, Plaintiff has not alleged that Defendants discriminated on the basis of race. Plaintiff responds that (A) Defendants denied Plaintiff employment because they falsely perceived that he was Caucasian, which constitutes racial discrimination sufficient to support a claim under § 1981; and (B) Plaintiff's allegations regarding discrimination on the basis of skin color are sufficient to assert a discrimination claim under § 1981.

**A. Discrimination on the Basis of Perceived Race**

Plaintiff admits that he has "not asserted that he was not hired because of his identification as Hispanic." He argues, however, that he has raised a race-based claim under § 1981 because "the allegations support a reasonable inference that Defendants perceived Plaintiff to be of Caucasian descent." Thus, he argues, Defendants discriminated against Plaintiff based on their mistaken belief that he is Caucasian. Plaintiff's argument fails because he has not

---

[1] Service of process of the Amended Complaint took place on May 22, 2018 (on the City), and June 19, 2018 (on Ms. Argentina). Thus, removal was timely.

pleaded any facts from which the Court may reasonably infer that Defendants believed that Plaintiff was Caucasian.

The facts alleged by Plaintiff do not suggest that Defendants believed that Plaintiff was Caucasian. For example, by telling Plaintiff that he needed to get a tan, Ms. Refern suggested that Plaintiff is too pale, but she did not suggest that she believes that Plaintiff is Caucasian. Moreover, Plaintiff's Amended Complaint repeatedly states that Defendants discriminated against Plaintiff because he was the wrong color or because of the color of skin, not because Defendants mistakenly believed that Plaintiff was Caucasian. Additionally, Plaintiff alleges that Defendants had a custom of hiring persons of darker colored skin, not persons of a different race (*e.g.*, non-Caucasian). Indeed, Plaintiff does not use the terms "white" or "Caucasian" anywhere in his Amended Complaint. Thus, Plaintiff's allegations do not support an inference that he is alleging racial discrimination based on Defendants' mistaken belief that Plaintiff is Caucasian.

**B. Discrimination on the Basis of Skin Color**

Plaintiff also argues that discrimination on the basis of skin color is sufficient to assert a claim under § 1981. Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." Although § 1981 does not itself use the word "race," the Supreme Court has construed the section to forbid all racial discrimination in the making of public as well as private contracts. *Runyon v. McCray*, 427 U.S. 160, 168 (1976).

Defendants rely on *Pavon v. Swift Transportation Co., Inc.* in support of the proposition that § 1981 does not protect individuals from discrimination on the basis of color. 192 F.3d 902, 908 (9th Cir. 1999). In *Pavon*, however, the court held that the plaintiff properly asserted a claim under § 1981 by asserting that the defendant discriminated against the plaintiff on account of his

Hispanic race. *Id.* The court did not address whether § 1981 protects against discrimination on the basis of color. *Id.*

Two district courts in the Northern District of Illinois previously held, without much discussion or cited authority, that § 1981 did not protect individuals from color-based discrimination. *See Sere v. Board of Trustees*, 628 F. Supp. 1543, 1546 (N.D. Ill. 1986), *aff'd*, 852 F.2d 285 (7th Cir. 1988) and *Waller v. International Harvester Co.*, 678 F. Supp. 314 (N.D. Ill. 1984). After these decisions, however, the Supreme Court more broadly construed racial discrimination under § 1981. *St. Francis College v. Al-Kharzaji*, 481 U.S. 604 (1987). In *St. Francis*, the Supreme Court held that § 1981 protected a plaintiff from discrimination based on Arabian ancestry because such discrimination would have been considered "racial discrimination" at the time that § 1981 was passed. *Id.* at 613. In so holding, the Supreme Court stated:

> based on [the] history of § 1981, we have little trouble concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory. The Court of Appeals was thus quite right in holding that § 1981, "at a minimum," reaches discrimination against an individual "because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of homo sapiens." It is clear from our holding, however, that a distinctive physiognomy is not essential to qualify for § 1981 protection.

*Id.*

A district court in the Northern District of Georgia relied on *St. Francis* in holding that Title VII protects individuals from color-based discrimination. *Walker v. Sec'y of Treasury, I.R.S.*, 713 F. Supp. 403, 408. (N.D. Ga. 1989). That court noted that "it would take an ethnocentric and naïve world view to suggest that we can divide Caucasians into many sub-

PAGE 7 – OPINION AND ORDER

groups but somehow all blacks are part of the same sub-group. There are sharp and distinctive contrasts amongst native black African peoples (sub-Saharan) both in color and in physical characteristics." *Id.* A district court in the Northern District of Illinois later cited *Walker* and *St. Francis* in concluding that § 1981, in addition to Title VII, protects individuals from color-based discrimination. *Jordan v. Whelan Security of Illinois, Inc.*, 30 F. Supp. 3d 746, 753 (N.D. Ill. 2014). The Court agrees that *St. Francis* supports the conclusion that § 1981 encompasses claims of color-based discrimination. Light-skinned and dark-skinned Hispanics, as well as other ethnic peoples, are distinct sub-groups distinguished by ethnic characteristics, and § 1981 protects individuals from discrimination on the basis of those sub-groups.

The legislative history of § 1981 lends additional support to the conclusion that § 1981 provides a remedy for color-based discrimination. *See* Trina Jones, *Shades of Brown: The Law of Skin Color*, 49 Duke L. J. 1487 (2000). When originally proposed in Congress, § 1981 included text prohibiting discrimination on the basis color. Initial versions of the bill stated, in part: "there shall be no discrimination in civil rights or immunities among the inhabitants of any state or Territory of the United States on account of race, color, or previous condition of slavery. . . ." 36 Cong. Globe, 39th Cong., 1st sess. 211 (1866). Although the House ultimately struck this passage from the statute, the debates make clear that it was removed because of the breadth of the terms "civil rights and immunities" and not because of a desire to exclude protection on the basis of color. *See* Alexander M. Bickel, *The Original Understanding and the Segregation Decision*, 69 Harv. L. Rev. 1, 11-29 (1955).

The Supreme Court has also recognized the statute's legislative history and that one of the purposes of § 1981 is to protect persons from discrimination based on color. *See McDonald v. Santa Fe Trail Transportation Company*, 427 U.S. 273, 287 (1976) (performing an exhaustive

study of the legislative history of § 1981 and making repeated references to the fact that the statute was originally enacted to apply to citizens of "every race and *color*" (emphasis added)); *United States v. Cruikshank*, 92 U.S. 542, 555 (1875) (noting that the purpose of § 1981 is the "protection of citizens of the United States in their enjoyment of certain rights without discrimination on account of race, *color*, or previous condition of servitude" (emphasis added)). Other courts have relied on this as the purpose of § 1981, citing to *Cruikshank. See, e.g.*, *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1079-80 (10th Cir. 2002) (Jenkins, J. concurring and dissenting in part); *Walker*, 713 F. Supp. at 405. Many courts have expressly found that § 1981 include claims of discrimination based on color. *See, e.g.*, *Jordan*, 30 F. Supp. 3d at 753 ("The court agrees with the courts that have held that *St. Francis* compels the conclusion that § 1981 encompasses claims of color discrimination."); *Uzoukwu v. Metro. Wash. Council of Gov'ts.*, 27 F. Supp. 3d 62, 66-67 (D.D.C. 2014) ("[C]laims based on color, race, and/or ethnicity are actionable under Section 1981."); *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253, 1261 (N.D. Ala. 2002) ("Section 1981, like Title VII, prohibits discrimination on the basis of color, as well as race."); *Moosa v. Dolan Foster Enters., Inc.*, 1997 WL 203706, at *4 (N.D. Cal. Apr. 17, 1997) (noting that "[t]he reference to 'white citizens' requires there to be an element of race, color and/or citizenship in any Section 1981 claim").

   The Court concludes that § 1981 protects individuals from discrimination on the basis of skin color. The Court also concludes that Plaintiff has alleged facts from which the Court may plausibly infer that Defendants discriminated against Plaintiff on the basis of his skin color. Thus, Defendants' Motion to Dismiss is denied.

/ / /

## CONCLUSION

Defendants' Motion to Dismiss (ECF 3) is DENIED.

**IT IS SO ORDERED**.

DATED this 2nd day of August, 2018.

<u>/s/ Michael H. Simon</u>
Michael H. Simon
United States District Judge