# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FRANK HIGUERA**, | Case No. 3:18-cv-1083-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CITY OF PORTLAND,** a municipal corporation**,** and **EILEEN ARGENTINA**, an individual, | |
| Defendants. | |

Judy Danielle Snyder and Holly Lloyd, LAW OFFICES OF JUDY SNYDER, 1000 SW Broadway, Suite 2400, Portland, OR 97205. Of Attorneys for Plaintiff.

Anne Milligan and Michael J. Jeter, Deputy City Attorneys, PORTLAND CITY ATTORNEY'S OFFICE, 1221 SW 4th Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Frank Higuera ("Higuera") filed a lawsuit in state court against Defendants City of Portland ("City") and Eileen Argentina (collectively, "Defendants"). Plaintiff asserts claims under Oregon Revised Statutes ("ORS") § 659A.030(1)(a) and 42 U.S.C. §§ 1981 and 1983, alleging that Defendants discriminated against and refused to hire Plaintiff because of his color; specifically, that he is too pale. Defendants timely removed this case to federal court. Defendants

now move for summary judgment against all of Plaintiff's claims. For the reasons discussed below, Defendants' motion is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Plaintiff is a resident of Oregon. His stepfather, who adopted Plaintiff, is Hispanic. Plaintiff alleged in his original complaint that he was a "light skinned Hispanic male." After counsel for Defendants raised concerns with Plaintiff's counsel that this allegation was not true, Plaintiff amended his complaint. Plaintiff's Amended Complaint alleges that he "identifies as a Hispanic male."

Beginning in 2011, the City hired Plaintiff as a seasonal maintenance worker with the City's Parks and Recreation Department, working from March through October of each year. On

February 12, 2018, Plaintiff began working full time for the City in a Utility I position. He was hired for that position in January 2018. His duties in both the seasonal maintenance worker and Utility I positions are essentially the same. He maintained City parks by cleaning restrooms, emptying trash containers, picking up debris, and performing landscaping maintenance. Plaintiff's allegations involve his difficulty getting hired in other positions, particularly positions involving working with at risk youth.

Since 2014, Plaintiff has applied for numerous positions in the City's Parks & Recreation Department. Defendant Eileen Argentina is the Parks & Recreation Services Manager and has ultimate authority over hiring decisions in the department. Plaintiff complains about Defendants' failure to hire him in several positions.

## A. Recreation Coordinator I – At Risk Youth

The first position for which the City's hiring decisions are challenged by Plaintiff is Recreation Coordinator I – At Risk Youth Outreach, examination plan number 2015-00454. Plaintiff applied for this position in October 2015. He was interviewed for this position on February 1, 2016. Plaintiff contends that the position was converted to two vacancies, which were filled by two African American males in February 2016. In July 2016, a new recruitment was issued from this examination plan number for another Recreation Coordinator I – At Risk Youth Outreach position. On August 22, 2016, the City hired Yvette Mata for that position.

Ms. Mata's application materials indicate that she is a heritage speaker of Spanish, reads and writes Spanish, has a Bachelor of Arts degree in English and Mexican American Studies, and has a Master of Arts degree in Education Leadership and Policy Studies. ECF 60-6 at 3. Her listed experience includes that she was the Director of Community Outreach and Teens at YMCA Dallas Metro in Dallas, Texas from 2013-14 and was a Student Development Specialist

at the University of Texas at San Antonio and Alamo Colleges from 2001-12. *Id.* Ms. Mata is Latina.

By comparison, Plaintiff's only listed relevant experience was volunteer work. For example, Plaintiff listed: (1) volunteering at a nonprofit family housing shelter for 18 years; (2) running an Easter Egg hunt for 13 years; (3) working as an advisor for a high school LaCrosse team for four years; serving as an advisor at a high school Latino club for four years; and several other high school volunteering and coaching positions. ECF 33-12. Plaintiff did not list any dates for his volunteer experiences, leaving hiring personnel to guess at how recent or remote in time they occurred. His volunteer experiences mainly were at Rex Putnam High School and Milwaukie High School. Plaintiff also had professional work experience at both of those high schools. His resume shows that he last worked at Rex Putnam High School in 2008 and Milwaukie High School in 2001. Plaintiff did not list any post-secondary school education.

Plaintiff also challenges the filling of a position at the Mt. Scott Community Center. Jeff Milkes, a zone manager, approached Plaintiff about a temporary Recreation Coordinator I position at this location. Mr. Milkes then introduced Plaintiff to Craig Vanderbout, a supervisor at the Mt. Scott Community Center. Plaintiff, Mr. Milkes, and Mr. Vanderbout talked over coffee. It was not a job interview, but an introductory meeting. ECF 39 at 3 (Milkes Decl. ¶ 11). Plaintiff remembers this meeting as taking place in March 2016. ECF 51 at 6-7 (Plf's Decl. ¶ 19). Mr. Vanderbout did not recall when this meeting took place, but assumed that it must have occurred in 2012, the only time that the Mt. Scott Community Center had a vacancy for a teen Recreation Coordinator position. That vacancy was filled by Ms. Madalyn Bach, a white female. Mr. Milkes, however, stated that this meeting took place in 2016. ECF 52 at 2 (Milkes Decl. ¶ 2). Karen Birt, a recreation supervisor with the City, recalls that Ms. Bach was hired in 2011, 2012,

or 2013, before Ms. Birt became the formal supervisor for the Mt. Scott team, but while she was a recreation supervisor for the City. ECF 48-5 at 8 (Birt Dep. 49:10-21).

Ms. Birt also testified that there was a vacancy at Mt. Scott in 2016, but the position was filled by the transfer of Ryan Fitzpatrick, an existing Recreation Coordinator, into a permanent position, and that there was no temporary hire. *Id.* (Birt Dep. 48:4-49:9); *see also* ECF 35 at 4 (Birt Decl. ¶ 14). Mr. Milkes also testified that Ms. Argentina told him that an existing permanent recreation coordinator would be laterally moved into the Mt. Scott vacancy in 2016. ECF 39 at 3 (Milkes Decl. ¶ 14); *see also* ECF 52 at 2 (Milkes Decl. ¶ 5) (testifying that in 2016 Ms. Argentina explained "that the Mt. Scott position would be used to transfer an existing Teen Coordinator"). Mr. Fitzpatrick is a white male. ECF 35 at 4 (Birt Decl. ¶ 14).

## B.  Recreation Leader – Teen

Plaintiff applied for a Recreation Leader – Teen position from examination plan number 2017-00225 on April 30, 2017. The application process for this position was anonymized. ECF 35 at 3 (Birt Decl. ¶¶ 6-9); *see also* ECF 33-8 at 3. Ms. Birt, the hiring manager of this position, had a panel review and rate the candidate's responses from the questions. She anonymized the process by redacting the candidates' names. The review panel scored the anonymous responses without knowing the names of any of the candidates. Those with the highest scores were invited to interview. Plaintiff was not among the top scorers and was not invited to interview.

The City hired Michella Apodaca-Johnson for this position on September 19, 2017. Ms. Apodaca-Johnson's application materials showed that she started a non-profit, Selfie Sessions, and worked there for one year. In that role she advocated for self love, self awareness, and self confidence in teen women. She partnered that nonprofit organization with Boys and Girls Club of America. She also created a workshop for teen women. Additionally, she had six

years' experience working as a preschool teacher. She had post-secondary education at Shoreline

Community College focused on Early Childhood Education and Creative Writing and

Journalism. ECF 34-2 at 4. Plaintiff listed the same volunteer and coaching experience that he

listed in his application for the Recreation Coordinator I – At Risk Youth position.

**C.  Recreation Coordinator I – Teen Service Outreach Specialty**

Plaintiff applied for the position of Recreation Coordinator I – Teen Service Outreach

Specialty from examination number 2017-00733 in December 2017. He was not interviewed for

any position from this examination number.

The City hired Harold Ridge on May 31, 2018 and Andre Channel on June 11, 2018 from

this examination number. Mr. Ridge's application materials show that he had worked from 1990-

94 as a Recreation Leader – Camp Coordinator at Mt. Scott Community Center and from 1994-

2017 as a Recreation Coordinator I – Generalist at Mt. Scott, University Park, and Matt Dishman

Community Centers. ECF 60-9 at 4-6. He also worked from August 2017 to the date of his

application in the position of Recreation Coordinator I – Teen Services at East Portland

Community Center. He won the 2015 Directors Teamwork Award for Summer Teen Services

Program. Mr. Ridge also had a degree in Early Childhood Education from Mt. Hood Community

College. Mr. Ridge is African American and black.

Mr. Channel's application materials show that from 2004 to the date of his application,

Mr. Channel worked in student support services and as a career coach at Rosemary Anderson

High School. ECF 60-8. He worked from 2015 to the date of his application as a STRYVE

(Striving to Reduce Youth Violence Everywhere) Site Supervisor, responsible for the

recruitment, hiring, and training of community youth participating in the SummerWorks

employment experience. He worked from 2004-2008 as a Youth Business Coordinator, helping

youth become certified as baristas and working to develop partnerships with Starbucks, A.J.

Java, New Seasons Market, and Bridgetown Coffee, to help promote employment opportunities for program participants. Mr. Channel is African American and black.

At the time of his application, Plaintiff listed the same volunteer and coaching experience that he previously listed. His relevant volunteer experience, however, was even more remote in time.

### D.  "Get a Tan" Comment

Plaintiff states that in the summer of 2016, he was telling Betsy Redfearn, a South Zone Supervisor, about Plaintiff's difficulties getting hired for a permanent recreation job with the City. ECF 51 at 7 (Plf Decl. ¶ 7). Plaintiff testified that Ms. Redfearn told Plaintiff to "get a tan." *Id.* Ms. Redfearn has no recollection of making such a statement to Plaintiff, nor does she believe such a statement is something that sounds like anything that she would say, because of its phrasing. ECF 40 at 2 (Redfearn Decl. ¶¶ 4-6).

### E.  "Wrong Color" Comment

Plaintiff asserts that Mr. Milkes told Plaintiff in March 2017, after Mr. Milkes was no longer employed by the City, that he was unable to hire Plaintiff in a Recreation Coordinator I position in 2016 because Ms. Argentina told Mr. Milkes that Plaintiff was "the wrong color." ECF 51 at 8 (Plf's Decl. ¶ 25); 33-1 at 59 (Plf's Dep. 122:10-25). Eileen Argentina testified that she did not make that statement. ECF 33-2 at 10 (Argentina Dep. 92:19-22). Mr. Milkes testified that Ms. Argentina stated that Plaintiff was not "the right fit." ECF 39 at 3 (Milkes Decl. ¶ 15). Mr. Milkes further testified that in that same conversation, Ms. Argentina explained that she wanted to hire a person of color for another vacancy in another location, and that an existing permanent employee would then be transferred to the vacant Mt. Scott position. *Id.* (Milkes Decl. ¶ 14). Mr. Milkes also testified that while at the City he felt "intense pressure" to hire people of color and not to make employment decisions based on merit. ECF 52 at 3 (Milkes Decl. ¶ 6-7).

**DISCUSSION**

Defendants assert that only a few instances of failure to hire occurred within the applicable statute of limitations. Defendants argue that Plaintiff fails to meet his burden of making a *prima facie* case of disparate treatment based on color discrimination for those alleged instances. Defendants also argue that even if Plaintiff could make a *prima facie* case, Defendants had legitimate, non-discriminatory reasons not to hire Plaintiff and Plaintiff fails to show pretext. Plaintiff raises numerous evidentiary objections to evidence submitted by Defendants, and Defendants also raise several evidentiary objections. Plaintiff also argues that he presents enough evidence to meet his low bar to make a *prima facie* case and that he raises genuine issues of material fact sufficient to defeat summary judgment regarding pretext.

**A.  Evidentiary Objections**

   **1.  Defendants' Objections**

Defendants object to what Plaintiff says Mr. Milkes said Ms. Argentina purportedly told Mr. Milkes. Defendants also object to Mr. Milkes' declaration stating what Ms. Argentina and other City employees purportedly told Mr. Milkes. Defendants argue that Plaintiffs' statements and Mr. Milkes' statements are hearsay and are not statements by a party opponent because Mr. Milkes is no longer employed by the City. Mr. Milkes, however, is giving direct testimony in his declaration. The hearsay portion is when he relays what he heard from others, such as Ms. Argentina. Thus, the relevant question for the hearsay exception is whether the speaker of the hearsay portion (*e.g.*, Ms. Argentina) was still employed by the City at the time of the purported statement, not whether Mr. Milkes was still employed by the City. Statements by City employees such as Ms. Argentina are not considered hearsay because they are statements by an opposing party about matters within the scope of their employment. Fed. R. Evid. 801(d)(2). Thus, when Mr. Milkes testifies about what an opposing party told him, it is not hearsay.

Plaintiff testifying about what Mr. Milkes told Plaintiff about what a City employee told Mr. Milkes, however, is different. Plaintiff's states that Mr. Milkes told Plaintiff in March 2017 that Ms. Argentina told Mr. Milkes that Plaintiff was the "wrong color." Defendants argue this statement is inadmissible hearsay. Under Rule 805 of the Federal Rules of Evidence, hearsay within hearsay is not excluded if each part of the combined statement satisfies an exception to the rule. Fed. R. Evid. 805. The first part of the statement, the purported statement by Ms. Argentina to Mr. Milkes, is not hearsay because it is a statement of an opposing party. *See* Fed. R. Evid. 801(d)(2). The second part of the statement, the purported statement by Mr. Milkes to Plaintiff, is not a statement by a party opponent because Mr. Milkes was no longer employed by the City when he purportedly made the statement to Plaintiff. Plaintiff does not argue that any other hearsay exception applies to that statement.

In considering a motion for summary judgment, evidence does not need to be presented in an admissible form, so long as it reasonably can be inferred that the evidence could be presented in admissible form at trial. *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (noting that "at summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony"). Thus, if it appears that Mr. Milkes would testify at trial that Ms. Argentina made that statement to him and that Mr. Milkes told Plaintiff as much, the Court could accept this hearsay evidence at summary judgment. Mr. Milkes, however, submitted a declaration that does not support Plaintiff's hearsay account. Mr. Milkes' declaration states that Ms. Argentina told Mr. Milkes that hiring Plaintiff was not "the right fit," instead of saying that Plaintiff was the "wrong color." Thus, there is no evidentiary support that the underlying hearsay, Mr. Milkes' purported statement to Plaintiff,

could be provided in admissible form at trial. Accordingly, Plaintiff's testimony that Mr. Milkes told Plaintiff that Ms. Argentina said Plaintiff was the "wrong color" is excluded as inadmissible hearsay.

### 2. Plaintiff's Objections

Plaintiff raises numerous objections to evidence submitted by Defendants. The Court specifically rules on certain objections to materials expressly considered by the Court in evaluating the pending motion. The remaining objections are denied as moot. The Court only considers relevant, admissible evidence in evaluating Defendants' motion.

Plaintiff objects to the application materials of the candidates hired in the positions to which Plaintiff applied as inadmissible hearsay. These materials, however, are not submitted for their truth. The applicants may have included inaccurate information in their application materials without the City's knowledge. These materials are submitted only for their effect on the City. The records are the information about the job applicants that was before the City when it was making its hiring decisions. City employees reviewed the application materials of all applicants when deciding whom to hire, because that was the available information. This information is offered to the Court not to attest to the truthfulness of what the applicants listed, but only so that the Court can consider the information the City had before it when it compared the listed qualifications and made hiring decisions based on the information provided by the applicants. The accuracy of the information listed on the application materials is not the relevant point. Instead, the relevant issue is whether it appears that the City made hiring decisions based on purported qualifications and other factors, versus improper discriminatory factors. Plaintiff's objection here is overruled.

Plaintiff also objects as inadmissible hearsay to the September 29, 2017, report of Jeanne Kawamoto, which was originally attached to the Declaration of Anne Milligan and a

second copy was attached to the Declaration of Jeanne Kawamoto. This objection is overruled under Rule 803(8)(A)(iii) of the Federal Rules Evidence, which excepts from hearsay public records containing "factual findings in a legally authorized investigation."

Plaintiff further objects to paragraphs two through nine of the Declaration of Anne Milligan as not based on personal knowledge and containing hearsay. These paragraphs are based on personal knowledge—they are conversations had by Ms. Milligan. Regarding hearsay, the substance of the conversations are not being asserted for the truth of the contents, but for their effect on the listener, Ms. Milligan, and to explain her state of mind when she contacted counsel for Plaintiff and expressed concern regarding the factual allegation made in the complaint that Plaintiff was a light skinned Hispanic male. Ms. Milligan noted her concern arose under Oregon Rule of Civil Procedure 17C, Certifications to the Court. Ms. Milligan did not know with certainty the truth of the conversations she had with others. Her conversation with Plaintiff's counsel raising this concern, however, resulted in Plaintiff filing an amended complaint in this action. Plaintiff amended his allegation from one that he is a light skinned Hispanic male to that he *identifies* as a Hispanic male. Ms. Milligan's declaration simply explains the background, or context, of this amendment. Plaintiff's objection is overruled.

## B.  Claims on the Merits

Plaintiff does not clearly state the basis for his discrimination claim other than to say it is the "color of his skin." His claims have evolved over the course of the litigation in this case. He originally stated that he was a light-skinned Hispanic and appeared to be alleging discrimination based on "color," asserting that City gave hiring preference to darker-skinned Hispanics and African-Americans. After Plaintiff amended his complaint to state only that he *identifies* as Hispanic, he appears to be alleging "reverse discrimination"—that he is white and the City improperly gives preference to diverse candidates, primarily people of color. Although his

Amended Complaint does not use the terms "white" or "reverse discrimination," his brief in opposition to Defendants' motion discusses the validity of claims based on "white skin color," without explicitly agreeing to Defendants' assumption that Plaintiff is bringing claims based on his white skin color, or specifically asserting that Plaintiff's claims are based on his white skin color. Plaintiff, however, offers no other argument or basis for his discrimination claim based on color other than his white skin color.

 Plaintiff alleges that the City discriminated against Plaintiff because of his (white) color by "refusing to hire Plaintiff because of the color of his skin" or because he was the "wrong color." ECF 1-1 at 19, 20, 22 (Am. Compl. ¶¶ 20, 29, 41). Plaintiff argues that the City's conduct violated Or. Rev. Stat. ("ORS") § 659A.030, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment, brought as a claim under 42 U.S.C. § 1983.

### 1. Legal Standards

#### a. Section 1981 Claim

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." Although § 1981 does not itself use the word "race," the Supreme Court has construed the section to forbid all racial discrimination in the making of public as well as private contracts. *Runyon v. McCray*, 427 U.S. 160, 168 (1976). In addition this Court previously held that "§ 1981 protects individuals from discrimination on the basis of skin color." *Higuera v. City of Portland*, 2018 WL 3676820, at *5 (D. Or. Aug. 2, 2018).

A disparate treatment claim is "a claim that an employer intentionally treated a complainant less favorably than employees with the 'complainant's qualifications' but outside the complainant's protected class." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015). "[A] plaintiff can prove disparate treatment either (1) by direct evidence that a workplace policy,

practice, or decision relies expressly on a protected characteristic, or (2) by using the burden-shifting framework set forth in *McDonnell Douglas*."[1] *Id.* These considerations apply in § 1981 claims. *See Weil v. Citizens Telecom Servs. Co.*, 922 F.3d 993, 1002 (9th Cir. 2019).

Under the *McDonnell Douglas* framework, the plaintiff has the burden of establishing a *prima facie* case. *Id.* To establish a *prima facie* case of discriminatory failure to hire, a plaintiff must demonstrate that: (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications he was rejected; and (4) after his rejection the position remained open and the employer continued to seek applicants with the plaintiff's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The amount of evidence necessary to establish a *prima facie* case is "minimal." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000). After a plaintiff shows a *prima facie* case of discrimination, the burden shifts to the employer to present evidence of a legitimate, non-discriminatory reason for the adverse action. *Weil*, 922 F.3d at 1002. If the employer successfully carries this burden, then the plaintiff must produce evidence that the non-discriminatory reason given by the employer was merely pretext for discrimination. *Id.*

"[A plaintiff] may defeat summary judgment by offering direct or circumstantial evidence 'that a discriminatory reason more likely motivated the employer,' or 'that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable.'" *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 753 (9th Cir. 2010) (quoting *Chuang*, 225 F.3d at 1157). If a plaintiff relies on circumstantial evidence, however, "that evidence must be specific and substantial to defeat the employer's motion for

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

summary judgment." *Id.* (quoting *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009)). Additionally, "[a] plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action." *Id.* (alteration in original) (quoting *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006).

### b.  Section 1983 Claim

In considering a § 1983 claim of "employment discrimination under the Equal Protection Clause of the Fourteenth Amendment," courts are "not bound by the 'formal Title VII disparate treatment burden shifting framework'" but it may be "appropriate to apply the *McDonnell Douglas* burden-shifting framework to [such a] claim." *Anthoine*, 605 F.3d at 753 (quoting *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 754 (9th Cir. 2001)). The parties apply the same tests (direct evidence and the *McDonnell-Douglas* framework) in their briefing on Plaintiff's § 1983 claim and the Court agrees that is appropriate in this case.

### c.  ORS § 659A.030 Claim

Section 659A.030 provides that it is an unlawful employment action for an employer, because of a person's race, color, or national origin, among other things, to refuse to hire or bar or discharge the individual from employment. ORS § 659A.030(1)(a). Claims brought under this statute are analyzed under the same framework as claims brought under Title VII, including application of the *McDonnell Douglas* burden shifting. *See Dawson v. Entek Int'l*, 630 F.3d 928, 934 (9th Cir. 2011); *Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 657 (1986).

### 2.  Statute of Limitations

Federal claims brought under 42 U.S.C. §§ 1981 and 1983 borrow the statute of limitations from the state law statute of limitations for personal injury claims. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004) (§ 1981); *Wilson v. Garcia*, 471 U.S. 261

(1985) (§ 1983). Oregon's personal injury statute of limitations is two years. ORS § 12.110(1). Plaintiff filed his original complaint on March 23, 2018. Accordingly, he may assert federal claims only for hiring decisions by Defendants on or after March 23, 2016.

The job positions resulting in hiring decisions challenged by Plaintiff that fall within the statute of limitations are: (a) Recreation Coordinator I – At Risk Youth, the application process was July 2016 and Yvette Mata was hired on August 22, 2016; (b) Recreation Leader – Teen, the application process began April 2017 and Michella Apodaca-Johnson was hired on September 19, 2017; and (c) Recreation Coordinator I – Teen Service Outreach, the application process began in December 2017 and Harold Ridge was hired on May 31, 2018 and Andre Channel was hired on June 11, 2018. Plaintiff argues, however, that the "temporary" Recreation Coordinator position at Mt. Scott Community Center falls within the statute of limitations, and if it does not, the statute of limitations should be tolled by the discovery rule.

Neither party provided specific evidence relating to the "recruitment" or "hiring" for the Mt. Scott position. Plaintiff remembers having the introductory meeting with Mr. Milkes and Mr. Vanderbout "a month or so" after Plaintiff's February 1, 2016, interview for a different position. This places the meeting around early to mid-March 2016, which would be within the statute of limitations. Mr. Vanderbout does not remember when he met with Plaintiff and Mr. Milkes relating to Mt. Scott. Mr. Milkes remembered it was sometime in 2016. The evidence of when Ryan Fitzpatrick transferred to Mt. Scott is within Defendants' records, but Defendants did not provide this evidence. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that the decisions regarding this challenged job placement are within the statute of limitations for Plaintiff's federal claims.

For Plaintiff's state law claims, the Oregon Tort Claims Act requires that a plaintiff give notice within 180 days after the alleged injury. ORS § 30.275(2)(b). Accordingly, Plaintiff may only assert his state law claim for alleged conduct occurring within 180 days of his submission of his tort claim notice. Plaintiff submitted his tort claim notice on September 14, 2017. Therefore, only alleged unlawful hiring decisions on or after March 18, 2017, are actionable under Plaintiff's state law claim. This leaves only the hiring decisions relating to the positions of Recreation Leader – Teen and Recreation Coordinator I – Teen Service Outreach. Partial summary judgment is granted on Plaintiff's state law claim with respect to all other alleged unlawful actions by Defendants.

### 3.  Direct Evidence of Discrimination

 "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), *as amended* (Aug. 11, 1998) (alteration in original) (quoting *Davis v. Chevron*, *U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)). "[S]tray remarks not directly tied to the decisionmaking process are not direct evidence capable of defeating summary judgment." *France v. Johnson*, 795 F.3d 1170, 1173 (9th Cir. 2015); *see also McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1138 (9th Cir. 2004) (O'Scannlain, J., concurring in part and dissenting in part) ("Ninth Circuit cases involving discriminatory failure to promote have always involved evidence of discrimination among *decisionmakers*. Indeed, in the absence of additional evidence, 'statements by nondecisionmakers, nor statements by decisionmakers unrelated to the decisional process itself, [cannot alone] suffice to satisfy the plaintiff's burden in this regard.'" (emphasis and alteration in original) (citation omitted) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring))).

Viewed in the light most favorable to Plaintiff, the evidence shows that Ms. Argentina told Mr. Milkes that Plaintiff was not the "right fit" for a temporary position at Mt. Scott and that she wanted to hire a person of color for a different position, not a position for which Plaintiff applied. Plaintiff argues that this is direct evidence of discrimination. Regarding the position Ms. Argentina purportedly wanted to fill with a person of color, that statement is not direct evidence about Plaintiff because it requires an inference to relate to any employment decision involving Plaintiff. *See Johnson v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 502 F. App'x 523, 535 (6th Cir. 2012) (finding comment that if there are two equally qualified candidates the department should hire the diverse candidate is not direct evidence of discrimination because the comment "requires an inference because the statement did not refer to this employment decision").

Further, Plaintiff provided no evidence about this position. Plaintiff did not provide evidence about the candidates for the position, their color, their qualifications, the successful candidate, or the successful candidate's color and qualifications. The only evidence is the conclusory statement by Mr. Milkes that Ms. Argentina told him she wanted to hire a person of color. Having a stated goal of diversity, however, is not by itself evidence of discrimination. *See id.* (noting that "statements reflecting a desire to improve diversity do not equate to direct evidence of unlawful discrimination"). Absent evidence of hiring a person of color whose qualifications were clearly inferior to other white candidates, a general statement that Ms. Argentina wanted to hire a person of color by itself is not evidence of discrimination. Additionally, Plaintiff was focused on a position at Mt. Scott, and the only vacancy at that time in that location was filled by an existing white male employee who transferred to Mt. Scott, resulting in Plaintiff not being able to take a temporary position there that Mr. Milkes hoped

could be created. That is not direct evidence of discrimination against Plaintiff because he is white.

Regarding Ms. Argentina's statement that Plaintiff was not the right fit for a temporary position at Mt. Scott, that also is not direct evidence of discrimination. It requires an inference. A trier of fact would have to infer that by commenting that placing Plaintiff in a temporary position was not the "right fit," Ms. Argentina was really referring to Plaintiff's color. *See, e.g.*, *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 252-54 (2d Cir. 2014) (discussing whether comments that a candidate "did not fit in" or "fit in better" raise an inference of discriminatory motive in the context of pretext). This type of analysis, therefore, belongs in step three of the *McDonnell Douglas* framework.

Plaintiff also argues that Ms. Redfearn's statement that Plaintiff "get a tan" is evidence of discrimination. Although this statement is disputed, at summary judgment the evidence is viewed in the light most favorable to Plaintiff. First, this statement also is not direct evidence because it requires a factfinder to make an inference. Second, Ms. Redfearn was not involved in any of the hiring decisions disputed by Plaintiff. Nor does Plaintiff contend, or provide evidence, that Ms. Redfearn influenced any decisionmakers in a "cat's paw" theory of liability.[2] Thus, because this remark was not part of the decision-making process, it is not direct evidence of discrimination. *France* 795 F.3d at 1173; *McGinest*, 360 F.3d at 1138.

Plaintiff further argues that the fact that the Recreation Leaders supervised by Ms. Birt are persons of color is direct evidence of discrimination. Plaintiff cites no authority for this

---

[2] In employment discrimination cases, "'cat's paw' refers to a situation in which a biased subordinate, who lacks decision-making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 742 (8th Cir. 2009) (quoting *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 484 (10th Cir. 2006)).

proposition. The Court concludes that only evidence similar to evidence that would show pretext would suffice in this context as direct evidence of discrimination—evidence showing that Plaintiff's qualifications were "clearly superior" to the qualifications of the applicants selected by Ms. Birt. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1194 (9th Cir. 2003). Plaintiff provides no such evidence here. The mere fact that Ms. Birt hired some persons of color is not direct evidence of discrimination. In conclusion, Plaintiff has not provided direct evidence of discrimination sufficient to survive Defendants' motion for summary judgment.

### 4. Plaintiff's *Prima Facie* Case

Defendants raise various arguments as to why Plaintiff has not met his burden of making a *prima facie* case for the various positions for which Plaintiff has challenged Defendants' hiring decisions. Defendants first argue that Plaintiff fails to meet his burden of proving a *prima facie* case because he was not qualified for the positions. At this stage of the litigation, viewing the evidence in the light most favorable to Plaintiff and considering that Plaintiff's burden is minimal to make a *prima facie* case, the Court finds that he has shown that he was qualified for the positions. Although he worked as a maintenance worker, he had relevant volunteer work, albeit many years before he applied for the jobs at issue. The question of whether he was more or less qualified than the successful candidates is separate from whether he met minimum qualifications for the job.

Defendants also argue that Plaintiff has not met his burden of making a *prima facie* case for the Recreation Coordinator I – At Risk Youth position filled by Yvette Mata because Plaintiff was not an applicant for this position. Thus, argue Defendants, Plaintiff fails to show the first two factors of the *prima facie* test—that he applied and was rejected for the position. The Court agrees. Plaintiff applied, was interviewed, and was rejected for the earlier Recreation

Coordinator I – At Risk Youth position that was filled in February 2016 (outside the statute of limitations). He was not considered for the later position filled in August 2016. Even if Plaintiff could be considered to have applied and been rejected for this position, he would still fail to show pretext, as discussed below.

Defendants further argue that Plaintiff has not met his burden to make a *prima facie* case regarding the Mt. Scott "temporary" position. The Court agrees. Even viewing the evidence in the light most favorable to Plaintiff, the record shows that the City did not request applications for any temporary position at Mt. Scott in 2016, Plaintiff did not submit an application for any (temporary or permanent) position at Mt. Scott in 2016, the City did not reject Plaintiff's application, and the City did not keep the position open and continue to seek applicants with Plaintiff's qualifications after rejecting Plaintiff for the position. There simply was no vacancy for which a recruitment was held. Instead, staff was moved around at that time, and a full-time, permanent, white male, existing Recreation Coordinator was transferred to Mt. Scott. Thus, Plaintiff fails to show two of the four factors required for a *prima facie* case.

### 5. The City's Legitimate, Non-Discriminatory Reason

For those positions for which Plaintiff has made a *prima facie* case, and for the Recreation Coordinator I – At Risk Youth position that the Court has found Plaintiff did not make a *prima facie* case but for which a hiring process was held, the City has shown that it had legitimate, non-discriminatory reasons for hiring the people it hired. Even viewing the evidence in the light most favorable to Plaintiff, the record nevertheless shows that each of those candidates were at least equally qualified as Plaintiff, if not more so. Non-discrimination statutes do not deprive the employer of "discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981) (noting that Title VII "was not intended to diminish

traditional management prerogatives." (quotation marks omitted)). The burden thus shifts to Plaintiff to show that Defendants' reliance on the qualifications of the successful candidates is mere pretext.

### 6. Pretext

Plaintiff relies on circumstantial evidence of discrimination. Plaintiff must therefore show "specific and substantial" evidence of discriminatory intent to withstand summary judgment. *Anthoine*, 605 F.3d at 753. Defendants argue that Plaintiff cannot show that the City's non-discriminatory reason—the relative qualifications of candidates—was mere pretext for discrimination. The Ninth Circuit has addressed what is required when weighing relative qualifications:

> Blue argues that his qualifications were so superior to the selectee's qualifications that a rational trier of fact could find discriminatory intent. However, Blue did not present evidence that his qualifications were superior. Indeed, Blue and the selectee were scored almost identically twice prior to the interview based on their qualifications. "The closer the qualifications of the candidates, the less weight the court should give to perceived differences in qualifications in deciding whether the proffered explanations were pretextual." *Odima v. Westin Tucson Hotel Co.,* 991 F.2d 595, 602 (9th Cir.1993). Thus, the asserted superiority of Blue's qualifications does not raise a genuine issue of fact of pretext. *See Schuler v. Chronicle Broadcasting Co.,* 793 F.2d 1010, 1011 (9th Cir.1986) (subjective personal judgments of qualifications do not raise genuine issues of material fact).

*Blue v. Widnall*, 162 F.3d 541, 546 (9th Cir. 1998).

Plaintiff's arguments are weaker than those of the plaintiff in *Blue*. Plaintiff's qualifications are not superior to the qualifications of the selected candidates did Plaintiff score higher or even close to the selected candidates during the hiring process. Each position is discussed in turn.

For the Recreation Coordinator I – At Risk Youth position, the Court has found that Plaintiff did not make a *prima facie* case. Even if he had, Ms. Mata has relevant Bachelor of Arts and Master of Arts Degrees. She also had 13 years of relevant work experience. Plaintiff, on the other hand, listed no post-secondary education on his application materials. He also had no relevant professional experience at the time of his application. He had some relevant volunteer experience, but it appears from his resume that most of that volunteer experience ended eight years before his application. The record thus shows that Ms. Mata was more qualified than Plaintiff. Additionally, Plaintiff provides no evidence of Ms. Mata's color. Plaintiff provides evidence and argues that Ms. Mata is Latina. Plaintiff, however, has not brought a claim based on race or ethnicity discrimination. Asserting that Ms. Mata is Latina provides no evidence of her color. Indeed, Plaintiff originally alleged that he was discriminated against because he was a light skinned Hispanic. The mere fact that Ms. Mata is Latina is not evidence that her hiring shows discrimination against Plaintiff based on color.

For the Recreation Leader – Teen position, the initial round of the hiring process where Plaintiff was eliminated was anonymized, so Plaintiff's arguments of pretext are without merit. Additionally, the candidate hired, Ms. Apodaca-Johnson, had six years of teaching experience and one year working at a nonprofit. She also had a post-secondary education. Further, she scored higher than did Plaintiff in the hiring process. Plaintiff did not have any relevant work experience and based on a reasonable reading of his resume his most recent relevant volunteer experience was nearly nine years old. His resume did not list any post-secondary education. Even viewing the record in the light most favorable to Plaintiff, these candidates are equally qualified, which does not defeat summary judgment. Further, Plaintiff has not provided evidence of Ms. Apodaca-Johnson's color, so Plaintiff fails to show that the City's decision to hire

Ms. Apodaca-Johnson instead of Plaintiff could have been a decision based on color. Plaintiff provides evidence, and argues, that Ms. Apodaca is "multiracial," but Plaintiff has not asserted a claim of race discrimination. Merely asserting that Ms. Apodaca is multiracial does not provide evidence of her color to show that her hiring creates a genuine issue of whether Defendants' discriminated based on color.

For the Recreation Coordinator I – Teen Service Outreach positions, Mr. Ridge had 28 years of relevant work experience in the City's Parks & Recreation Department. He also had a post-secondary education. He was more qualified than Plaintiff. Mr. Channel had 14 years of relevant work experience, and his immediately previous three years' work experience was in a highly relevant position. He also was more qualified than Plaintiff, and even the most generous reading of the record in favor of Plaintiff would show that Mr. Channel was at least equally qualified as Plaintiff. Plaintiff cannot defeat summary judgment by comparing qualifications with these two candidates.

Plaintiff's argument regarding the "get a tan" comment fails to show pretext for the same reason it failed to show direct evidence of discrimination. Regarding Ms. Argentina's comment that it was not the "right fit" to move Plaintiff into a temporary position at Mt. Scott, although that statement may be vague, it does not show pretext if it is properly explained. *See Franett-Fergus v. Omak Sch. Dist. 19*, 2016 WL 3645181, at *8 (E.D. Wash. June 30, 2016), *aff'd*, 743 F. App'x 855 (9th Cir. 2018) ("While the phrase 'better fit,' without more, can be vague, Defendants have explained exactly why the successful candidate was a 'better fit' for the LAP position, and Plaintiff has not shown that a reasonable jury would find this explanation unbelievable."); *accord Craig v. Mnuchin*, 278 F. Supp. 3d 42, 57 (D.D.C. 2017) ("Although Mr. Craig also claims that his detail was the result of racial discrimination, he has not supported

this claim with sufficient evidence to rebut Defendant's claim that he was detailed to the position because it represented a 'better fit.'"). Ms. Argentina explained why she told Mr. Milkes she did not think a temporary assignment of Plaintiff was right for the Mt. Scott position. Ms. Argentina explained that the City was moving away from temporary assignments, which created at least the perception of an advantage for placement in the permanent position and toward permanent recruitment and placement, whether internal or external. ECF 33-2 at 9-10 (Argentina Dep. 91:6-92:14). This ensured a "strong candidate pool" so that the City could select "the right person for the job." *Id.* at 10. Indeed, there was no temporary position filled at Mt. Scott. An existing Recreation Coordinator, a white male, was transferred to Mt. Scott as a permanent employee.

Plaintiff's claims of pretext are similar to those in *Franett-Fergus*. As the court explained in that case:

> This Court finds Plaintiff has failed to present a genuine issue of material fact that Defendants' articulated reasoning was pretextual. Plaintiff argued, in her briefing and at oral argument, that (1) the successful applicant's ability to teach multiple subjects was irrelevant as this skill was not listed in the job posting; (2) the contention that the successful candidate was hired because she was a "better fit" is vague and pretextual on its face; (3) the job reference who allegedly said Plaintiff had trouble with authority declares he would not have said that about Plaintiff; (4) other negative comments Evans allegedly heard about Plaintiff have not been put forward with any specificity; (5) two members of the hiring committee, including Evans, expressed the need to add "diversity" to the WAVA program; and (6) Plaintiff was more qualified for the position. This circumstantial evidence of discrimination, however, is not sufficiently "specific and substantial" to raise a triable issue of material fact as to whether Defendants' proffered reasons are mere pretext for unlawful discrimination. [*E.E.O.C. v.*] *Boeing Co.*, 577 F.3d [1044,] 1049 [(9th Cir. 2009)].

*Franett-Fergus*, 2016 WL 3645181, at *8. Similarly, Plaintiff fails to provide specific and substantial evidence of discrimination sufficient to raise a triable issue of material fact that Defendants' hiring reasons were pretext for unlawful discrimination based on color.

**C.  Remaining Arguments**

Because the Court finds that summary judgment should be granted on Plaintiff's claims on the merits, the Court does not reach Defendants' arguments regarding qualified immunity for Ms. Argentina, the City's *Monell* liability, or punitive damages.

**CONCLUSION**

Defendants' motion for summary judgment (ECF 31) is GRANTED.

**IT IS SO ORDERED**.

DATED this 8th day of May, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge